| 2 | 897 |
| 47 | 265 |

## GIRARD et al. *v.* CITY OF NEW ORLEANS et al.

A testator bequeathed to the corporation of a city " a settlement consisting of one thousand arpents of land, with the appurtenances and improvements thereon, and all the personal estate thereto belonging and thereon remaining, including thirty slaves and their increase ; directing that no part thereof should be sold or disposed of for twenty years after his death, should B survive him and live so long, but said settlement to be kept up by B for said term of years as if it were his own, that is, to remain under his sole care and control, all the nett profits thereof to be enjoyed by B for his own use ; he rendering annually an account to the city of the state of the settlement, showing its income and expenses, the number and increase of the slaves, and its nett profits ; the testator further directed that, at the end of said twenty years, or at the death of B should he not live so long, the land, improvements, slaves, and other appurtenant personal property, should be sold as soon as the corporation deemed it advisable ; the proceeds to be applied by the corporation to such uses as it might deem most beneficial to the inhabitants" : *Held*, that the ownership of the property was given to the city, and the usufruct to B ; that the occurrence of circumstances preventing the establishment from being kept together, will not terminate the usufruct; that the language of the will is merely descriptive of the property, and not restrictive of its future use, pre-supposing the employment of the slaves on the land, but not imposing it as a condition of the usufruct ; and that the fact of such employment becoming impossible, or so onerous and inconvenient as to make it unreasonable to exact it, could not deprive the usufructuary of the fruits of the ordinary labor of the slaves elsewhere than on the land.

The 1st sec. of the stat. of 17 February, 1805, restricting the right of the corporation of New Orleans to hold real estate, to such as is situated within the limits of the city, does not include slaves.

Slaves are not real estate. They are declared to be immovables by a positive provision of the Code (art. 461) ; but neither in common parlance, nor in law, are they designated by the term *real estate.*

The owner of property subject to an usufruct has alone the right to call the usufructuary to account.

APPEAL from the District Court of Ouachita, *Curry*, J. *McGuire* and *Ray*, for the appellants. *Garrett*, for the defendant *Bry*. The judgment of the court was pronounced by

EUSTIS, C. J. This suit is instituted for the recovery of certain lands and slaves which formed part of the succession of the late *Stephen Girard*, of Phi-

ladelphia, of whom the plaintiffs are the heirs at-law. It involves the validity and effect of certain dispositions of his last will, and particularly of one by which the testator gave a tract of one thousand acres of land in the parish of Ouachita, established as a plantation, including the slaves, to the city of New Orleans, and disposed of the usufruct of the land and slaves to *Henry Bry*, for the term of twenty years from the decease of the testator, provided the usufructuary should survive him so long.

A question has been raised by the pleadings, and argued at length, as to the city of New Orleans being properly cited and made a party to this suit. After the argument of the case at the last term, we directed the record to be taken to New Orleans, in order that the corporation might become a party to the suit, and have the important interests dependent on it examined and discussed before us. We caused notice to be given to the proper authorities to that effect; but our efforts were not successful; and as the case stands before us, we are bound to decide the technical question as the corporation being properly in court, and thus leave the material points of controversy, so far as its interests are concerned, to be the subject of future litigation.

The citation is addressed to *Henry Bry*, as attorney in fact of the city of New Orleans, and was served on him in person, at his domicil in the parish of Ouachita. *Bry* expressly disavowed his authority to appear for the city of New Orleans, and excepted on behalf of the corporation to the sufficiency of the citation as in any manner binding on the corporation. This exception was overruled, and it is on the validity of this means of bringing the corporation into court that we must first decide. There was no impediment to citing the corporation regularly in this suit; it could have been sued as a party defendant, and ought to have been cited by its proper officers. C. P. 163.

We are not at all disposed to recognise the propriety of citing an attorney in fact, though he may have authority to appear in a court of justice, when the principal is present; and it is, to say the least, questionable, whether a municipal corporation can delegate such an authority. C. P. arts. 112, 198. Civil Code, arts. 429, 420. But this suit was instituted in 1841, and the power to *Bry* was given in 1832, before the division of the city, which took place in 1836, and the disavowal of his authority on the part of *Bry* to appear for the old corporation, is conclusive as to the power of the court to act on any matter exclusively appertaining to its interests, without having its representatives under the new municipal organisation cited according to law.

As a matter of practice it is too clear to admit of doubt that the old corporation of the city of New Orleans, not having been properly cited, was not in court; and that the judge erred in overruling the exception to that effect. This being the state of the case, and the parties representing the residuary interests under the will not being before the court, as the plaintiffs insist on a decision of the cause as it is before us, it is obviously our duty to confine our decision to those questions exclusively, by the determination of which the rights of the parties not represented will not be adversely affected, to wit: the ownership and usufruct of the slaves.

The plaintiffs contend that the testamentary disposition, in favor of the city of New Orleans and *Henry Bry*, of the land and slaves in the 19th clause of the will, is void, for want of a capacity to receive it on the part of the city, which by law had no right to hold lands except within its limits; that the usufruct falls with the failure of the legacy of the ownership; that there has been such a

change in the property that it can no longer be used in the manner directed by the will, and that the usufruct has thereby terminated, it being. as constituted by the will, of an entire thing, to wit, of a plantation and slaves to be worked together, and indivisible; and that, for each of these causes, the land and slaves belong of right to the plaintiffs, as heirs at law.

If it be conceded that the plaintiffs' position, in these respects, be correct, another question presents itself, and that is, whether, under the will, the property would in that event belong to them. or fall within the residuary clause, which is in favor of the mayor, aldermen, and citizens of Philadelphia. This question was argued before the Supreme Court of the United States in the case of *Vidal* v. *Girard's Executors*, 2 Howard's Rep. 128, but was not decided, the court considering the devise, which was contested, to be valid. It appears to rest upon authorities which are conflicting. and as it is not necessary to be decided now under the view which we have taken of this case, we proceed to examine the grounds on which the legacy of the usufruct in favor of *Bry* is sought to be defeated. The clause constituting it is in these words:

" All that part of my real and personal estate near Ouachita, in the State of Louisiana, the said real estate consiting of upwards of two hundred and eight thousand arpents, or acres of land, and including the settlement hereinafter mentioned, I give, devise, and bequeath, as follows, namely: 1. I give, devise, and bequeath to the corporation of the city of New Orleans, their successors and assigns, all that part of my real estate, constituting the settlement formed on my behalf by my particular friend, Judge *Henry Bree*, of Ouachita, consisting of upwards of one thousand arpents or acres of land, with the appurtenances and improvements thereon, and also all the personal estate thereto belonging and thereon remaining, including upwards of thirty slaves now on said settlement, and their increase, in trust, however, and subject to the following reservations: I desire, that no part of the said estate or property, or the slaves thereon, or their increase, shall be disposed of, or sold, for the term of twenty years from and after my decease, should the said Judge *Henry Bree*, survive me and live so long, but that the said settlement shall be kept up by the said Judge *Henry Bree*, for and during said term of twenty years, as if it was his own; that is, it shall remain under his sole care and control; he shall improve the same, by raising such produce as he may deem most advisable: and, after paying taxes, and all expo ses in keeping up the settlement, by clothing the slaves and otherwise, he shall have and onjoy for his own use, all the nett profits of said settlement: Provided, however, and I desire that the said Judge *Henry Bree* shall render annually to the corporation of the city of New Orleans, a report of the state of the settlement, the income and expenditure thereof, the number and increase of the slaves, and the nett result of the whole. I desire that, at the expiration of the said term of twenty years, or on the decease of the said Judge *Henry Bree*, should he not live so long, the land and improvements forming said settlement, the slaves thereon or thereto belonging, and all other appurtenant personal property, shall be sold, as soon as the said corporation shall deem it advisable to do so, and the proceeds of the said sale or sales shall be applied by the said corporation to such uses and purposes as they shall consider most likely to promote the health and general prosperity of the inhabitants of the city of New Orleans. But, until the said sale shall be made, the said corporation shall pay all taxes, prevent waste or intrusion, and so manage the said settlement and the slaves, and their increase thereon, as to derive an in-

GIRARD
v.
NEW ORLEANS.

come, and the said income shall be applied, from time to time, to the same uses and purposes, for the health and general prosperity of the said inhabitants.

" 2. I give, devise, and bequeath to the mayor, aldermen and citizens of Phila-delphia, their successors and assigns, two undivided third parts of all the rest and residue of my said real estate, being the lands unimproved near Ouachita, in the said State of Louisiana, in trust, that, in common with the corporation of the city of New Orleans, they shall pay the taxes on the said lands, and preserve them from waste or intrusion, for the term of ten years from and after my de-cease, and at the end of the said term, when they shall deem it advisable to do so, shall sell and dispose of their interest in said lands gradually, from time to time, and apply the proceeds of such sales to the same uses and purposes here-inafter declared and directed of and concerning the residue of my personal estate.

" 3. And I give, devise, and bequeath to the corporation of the city of New Orleans, their successors and assigns, the remaining one undivided third part of the said lands, in trust, in common with the mayor, aldermen and citizens of Philadelphia, to pay the taxes on said lands, and preserve them from waste and intrusion, for the term of ten years from and after my decease, and, at the end of the said term, when they shall deem it advisable to do so, to sell and dispose of their interest in said lands gradually from time to time, and to apply the pro-ceeds of such sale to such uses and purposes as the said corporation may con-sider most likely to promote the health and general prosperity of the city of New Orleans."

We think by these terms the ownership of the property is given to the city of New Orleans, and the usufruct to *Henry Bry*, during the period of and on the condition specified; and we do not find that the right appertaining to either ownership or usufruct are restricted, except as to the limitation of the latter as to time, to wit, the term of twenty years, or the survivorship of the usufructu-ary for that term. We do not perceive that there is any ground for circum-scribing the rights of the usufructuary, as is contended for by the plaintiffs, or for confining the usufruct unqualifiedly to the state the property was in at the time of making the will or the decease of the testator, and for holding the usu-fruct to be determined by the change which prevented the establishment from being kept together. The words made use of in the will are descriptive of the property as it is, and not restrictive of its future use. There is no attempt made to attach, by a condition, the slaves to the land, or to render it obligatory that they should be employed on it, and in no other way. Indeed, so far from the testator having any disposition to change or modify the condition of the slaves, their sale is expressly ordered by the will on the termination of the usufruct by the death of *Bry*, or on the expiration of the term of twenty years. The slaves had all been purchased and held in the name of *Bry*, because the latter very judiciously refused to have any thing to do with their management unless as their absolute owner. He was for many years the agent of the testator, and had the entire control of his property in Louisiana, and had conducted his busi-ness to the entire satisfaction of his principal. Hence the provision of the will that the settlement should be kept up as if it was his *(Bry's)* own. It appears that the greater part of the *settlement* mentioned in the will was upon lands to which the testator had no title; it had been made outside of his limits, and upon the lands appertaining to the public domain, which had been since purchased by other persons. The slaves became insubordinate, and *Bry*, believing that they

had set fire to their cabins, which had been destroyed, and that the establish-
ment could not safely be continued, removed the hands from the place. The land was then leased; the gin was afterwards destroyed; and, it being known that the settlement was upon the lands of the United States, it does not appear to have been afterwards cultivated.

This contingency was far from being foreseen or provided for by the testator, and the rights of the parties depend exclusively on the legal effect of the clause by which the usufruct was constituted. Restrictions on the right of property are not to be left to implication, and we do not feel ourselves authorised to modify the right of usufruct which *Bry* possesses under the will, or to impose on it any penalties or conditions other than those which the law imposes. The will gave him the usufruct of the slaves; it directed or presupposed their employment on a certain estate, but did not impose it as a condition of the usufruct. Their employment as directed has become impossible, or so onerous and inconvenient that it would not be reasonable to exact it, by reason of the principal part of the land belonginging to a third party, and the improvements being destroyed. We are at a loss to perceive on what principle these causes can defeat the usufruct of the slaves, or deprive the usufructuary of the fruits of their ordinary labor elsewhere. There is no such condition in the will, and the law implies none.

If the usufruct of the slaves is therefore to be considered separate and apart from that of the remaining portion of the land, what is there to prevent the city of New Orleans from taking the legacy of the ownership of the slaves? The provision of the act of 1805, which the plaintiffs rely upon as restrictive of the right of the city to hold property, has no reference whatever to slaves. The corporation could hold and convey any estate, real or personal, for the use of the corporation, provided such real estate be within the limits of said city. Slaves are in no sense real estate; they are considered as *immovables* by a positive article to that effect; but neither in common parlance, nor in law, are they designated by the term *real estate*. The right of the city to take by will or donation, so far as it relates to slaves, rests on the general provisions of the Code relating to corporations. Civil Code, art. 424.

The corporation of the city of New Orleans is therefore the owner of the slaves, and alone competent to call the usufructuary to an account for the causes set forth in the plaintiffs' petition, and alone has the benefit of the termination of the usufruct.

So far as relates to the claim of the plaintiffs to the land which is the subject of the legacy, it can only be determined in a suit in which proper parties are made; and we desire that the questions involved in it should be considered as entirely unaffected by the decision we make in this case, which is final only in relation to the usufruct of the slaves, which is the only interest represented by a party in court antagonist to that of the plaintiffs, and on which we have decided at the instance of both parties.

The suit against the city of New Orleans is therefore dismissed; and the judgment in favor of *Henry Bry* is affirmed, with costs in both courts.