Statement of the Case.
MONROE, C. J.
This is an action in jactitation of title wherein there was a judgment for plaintiff, from which defendant has appealed.
The issues were made up by the allegations of the petition and those of the following exceptions, which were filed by defendant and allowed to stand as an answer, to wit:
(1) “That plaintiff’s petition discloses no cause of action, in that it alleges that the possession of the surface rff the land is in another, to wit, one A. Bolden, and the plaintiff cannot maintain a slander of title action without alleging and proving that the plaintiff is in possession.”
(2) That plaintiff is not in possession of the *1040 land, and that Bolden was not in possession, as owner, at the time of plaintiff’s alleged purchase, but occupied the land as the tenant of the defendant.
For the purpose of showing possession as owner, through A. Bolden, usufructuary, plaintiff offered muniments of title and other evidence, to wit:
An instrument in writing, admitted to have been executed by defendant and delivered to A. Bolden at the time of its execution, which reads:
“Mansfield, La., 12/20, 1910.
“This is to certify that I have sold the Judie Lewis place to Abe Bolden and he has ten years to pay for same, $50.00 per year.
“[Signed] D. W. Saunders.”
The identity of the property designated in the instrument is not in dispute, nor is it disputed that the property so designated was delivered to Bolden by defendant, though there was some delay in the delivery, arising: First, from the refusal of defendant’s then tenant' to vacate; and, second, from the fact that, when, in March, 1911, he did vacate, Bolden was engaged with a crop on another place, and was not ready to move. He, however, went into possession of the Judie Lewis place in December, 1912, remained in possession up to the time of the trial, and, as we infer, is still in possession. He made a crop in 1912, and was engaged in making his crop of 1913 when, say, in May, his attention was called to the fact that the instrument of conveyance had not been recorded, and it was thereupon on May 23, 1913, filed for record, and recorded May 24th. On June 11th, he sold to plaintiff, for “$2,500 cash and other valuable considerations,” an undivided three-fourths interest in the property by an act in which he reserved the usufruct for life of the surface of the land for agricultural purposes, and the act was filed for record on June 12th and recorded June 14th. On June 16th he sold to O. W. Elam for $500 cash, and other valuable considerations, the remaining undivided one-fourth interest in the property, with a similar reservation of usufruct, and the act of sale was filed for record on June 16th and recorded on June 19th, and on July 8th Elam sold the interest so acquired to plaintiff by an act which was duly recorded.
Defendant offered an instrument in writing, reading:
“Mansfield, La., May 3, 1913.
“D. W. Saunders, Dealer in. General Merchandise.
“This is to certify that I have this day sold back to D. W. Saunders the Pier Lewis place, and rented same.
Abe X Bolden, mark
Attest: A. J. Bonds.”
—which instrument was filed for record June 17, 1915, and recorded June 20th. Defendant also offered an instrument of which the following is a copy:
“$25.00 Mansfield, La., May 3, 1913.
“On the first of October, 1913, after date, for value received, I promise to pay D. W. Saunders, or order, twenty five and - dollars,
with eight per cent, per annum interest from maturity until paid and all costs of collecting-same, including ten per cent, attorney’s fees if this note is not paid at maturity. For rent of Pier Lewis place.
his
Abe X Bolden.
mark
Attest: A. J. Bonds.”
Defendant was asked whether the instrument first above copied had been signed by Bolden in his presence and counsel for plaintiff—
“objected to the question and the document itself * * * that defendant, D. W. Saunders, having by his own admission signed a transfer of this property to Abe Bolden, it was of record among the conveyance records of De Soto parish * * *■ at the time of the purchase by the plaintiff herein, and, no retransfer of said property or lease thereto having been filed or recorded among the conveyance records of De Soto parish at that time, it is therefore inadmissible and it is incompetent for the defendant now to assert any right whatever growing out of any verbal or written agreement which may have been entered into between him and Bolden, and which did not appear on the records of De Soto parish; said Saunders having placed upon the public records a title in Bolden, on the faith of which the purchase by plaintiff herein was made, *1042 said Saunders, the vendor, must bear the consequences oí having presented the vendee’s rights in a false aspect.
• “By the Court: The objection is overruled, and the evidence is admitted for the restricted purpose of showing what possession the defendant has, or had, of the property. A decision of [as to] the effect of the instrument offered is reserved and [the question] will be passed upon when the.court decides the main issues. (Bill reserved by counsel for plaintiff.)
“It is agreed that the above objection and ruling shall be considered as tendered to all of the evidence along this line, and the ruling of the court is the same as above stated; and the same bill reserved as above.”
The further objection was made, that the instrument in question could not be considered a retrocession of the property, for the reason that no consideration is expressed in it, which objection was also overruled for the reasons previously stated by the judge.
Opinion.
[1] Considering the exception of no cause of action, as herein filed, we first inquire as to the character of the action to which it is addressed; that is to say, the relief sought and the allegation and the proof required for its obtention. It is not uncommonly called an action of slander of title, but it came to us from the Spanish law, differs materially from the common-law action of slander of title, and is, perhaps, better known as an action in jactitation, or jactitation of title and as a form of and governed by, the rules applicable to the possessory action.
The purpose of the common-law action of slander of title is to protect or vindicate the title to property, real or personal, from false or malicious public utterances concerning it, by means of a judgment condemning the detainer to pay damages. The prerequisites are: The uttering and publishing of the slanderous words; that they were false; that they were malicious; that plaintiff sustained special damages thereby; that he possessed an estate or interest in the property slandered. The burden of proof rests on the plaintiff, and, if the defendant can show that the defect, alleged by him, exists in the ti-tie, the action is dismissed. 25 Cyc. 5578. “Jactitation,” in law, is defined as:
“False boasting, or assertions repeated to another’s prejudice, false claims.” Web. New. Int. Die.
Mr. Abbott further says of it:
“The term designates a wrong which, in certain aspects, is cognizable, under the canon law, in the Ecclesiastical Courts [as in the case of jactitation, or false boasting of marriage]. The wrong known in the common law as slander of title is, in its nature, a species of jactitation, and the Louisiana Code allowed an action ol jactitation to protect ;he ownership of lands from disturbance by slander of title.” Abb. Law Die. verbo, “Jactitation.”
It is no doubt true that the wrong — a false claim of title — is, in its nature, a species of jactitation, a slander of title, but the learned author is in error in saying that the Louisiana Code allowed an action of jactitation “to protect the ownership of lands,” since the action which our Code of Practice allows is limited in its purpose to the protection of possession and, in terms, excludes all questions of title. The first case upon the subject, in our reports, appears to be that of Livingston v. Heerman, 9 Mart. (O. S.) 656, decided in 1821, four years before the adoption of the Code of Practice, pursuant to the provisions of the fourth law of the second title of the third partida. Mr. Justice Porter, as the organ of the court, after citing the law, said:
“In these and like cases [i. e.: Where one goes about declaring that another is his slave, or defaming him in his character, or slandering his title to his property] the person injured may petition the judge to oblige the defamer to bring suit, and prove what he has -said, or to retract, or to make such reparation as the judge shall deem just; if he refuses to bring the suit, the party aggrieved shall be forever absolved from the charge made against him. * * * Now, when a suit is commenced like the present, the defendant should do one of two things, either deny that he has said so, which would amount to a waiver of title, or admit the accusation and aver his readiness to bring suit. In the first alternative, this court [the court] would proceed to try the fact whether he had defamed the title or not, and give damages accordingly. In the second, they [it] would order suit to be *1044 commenced. This, it appears to me, is the regular course. The object of this law was * * * to protect possession; to give it the same advantages when disturbed by slander as by actual intrusion. To force the defamer to bring suit, and throw on him the burden of proving what he asserted.”
[2] The learned justice then proceeds to say that, the defendant having set up his alleged better title, in his answer, the matter could he as well tried in the case then before the court as though he should be ordered to bring a separate suit, but that the burden still rested on him to show the better title; and the question of title was accordingly considered and decided. The ruling so made has since been invoked as authority for holding that a defendant in a possessory action may set up his title, and thus convert it into a petitory action, at his option; but, when, in 1825, the Code of Practice, which had, long before, been under consideration, was adopted, its framers emphasized, in providing the possessory action, the doctrine that, as to immovable property, there should be an action for the protection of possession into which, save by consent of the parties, no question of title should be injected. Thus article 46 defines the possessory action as one which “may be brought by any possessor of a real estate, or of a real right, who is disturbed either in the possession of the estate or in the enjoyment of the right, against him who causes the disturbance, in order to be maintained in, or restored to, the possession, * * * provided his possession be accompanied by the qualifications hereafter required” ; the qualifications thus referred to being prescribed by article 47 et seq., as follows:
Article 47. The “possessors” entitled to bring the action are those “who possess, as owners,” and also usufructuaries and others having real rights when disturbed in the enjoyment of their rights. Article 49. In order that such person may be entitled to bring the action, it is required: (1) That he should have had the real and actual possession of the property at the instant when the disturbance occurred; (2) that he should have had that possession, quietly and without interruption, by virtue of one of the titles prescribed in article 47 for more than a year previous to his being disturbed, save in cases where he has been evicted by force or by fraud; (3) that he should have suffered a real disturbance, “either in fact or in law”; (4) that he should have brought his suit, at the latest, within the year in which the disturbance occurred.
“When the possession of the plaintiff is accompanied with all these circumstances, it matters not whether he possesses in good or in bad faith or even as a usurper, he shall, nevertheless, be entitled to his possessory action.”
Article 53 declares that:
“The plaintiff in a possessory action needs only, in order to make out his case, to prove that he was in possession of the property in question, in the manner required by this Code, and that he has been either disturbed or evicted within the year previous to his suit. So that when the possession of the plaintiff, or the act of disturbing him is denied, no testimony shall be admitted, except as to the fact of the possession, or as to the act of disturbance, and all testimony relative to property shall be rejected.”
Article 54 reads:
“If the possessor who has been disturbed in or evicted from his possession, bring a petitory action, that is to say, claim the ownership of the property, he shall not afterwards be entitled to the possessory, by dismissing the petitory action. The same rule shall govern, if he sue at the same time, for the possession and the ownership of the property; he shall then be considered as having renounced the possessory in order to resort to the petitory action.”
Article 55:
“Petitory and possessory actions shall not be cumulated or joined together, except by consent of parties. Therefore, he who is sued in a possessory action cannot bring a petitory action until after judgment shall have been rendered in the possessory action, and until, if he has been condemned, he shall have satisfied the judgment given against him.”
This suit, considered with reference to the allegations and the prayer of the petition *1046 alike, is governed by the rules thus provided, and the question raised by the first exception is whether the allegations of the petition are sufficient to sustain such an action. The allegations which' are pertinent to the issue are as follows:
“That netitioner is the owner, and in the actual possession, by himself, his authors and his usufructuary, as herein below set out, and has been in such possession, for two years and more, of the following described land [describing it]; that he acquired an undivided three-fourths interest in said land by deed from Abe Bolden, of June 11, 1913; * * * that he acquired an undivided one-fourth interest * * * from Charles W. Elam, by deed of date July 8, 1913; * * * that said * * * Elam acquired said undivided one-fourth * * * by deed from said Abe Bolden of date June 16, 1913; * * * that said Abe Bolden acquired said land in its entirety on the 20th day of December, 1910, by deed from Dennie W. Saunders; * * * that by the deeds to himself * * * and to said * * * Elam * * * said Abe Bolden reserved a life usufruct of the surface of said land for agricultural purposes, and has been in such possession as usufructuary since the signing of said deeds and is now; * * * that said Abe Bolden, under said title from said Dennie W. Saunders, had the actual physical possession of said land, as owner, from the date of said title up to the date of his said sales to petitioner and to said Charles W. Elam, and since the purchase by petitioner from said * * * Elam has been, and is. now, in such possession * * * as agent and usufructuary of the petitioner; * * * that, by virtue of such purchases, as aforesaid, he acquired, not only the ownership of said land, but that the prior possession of his authors, as hereinabove alleged and set out, inures to the benefit, and becomes the possession of petitioner.”
We -understand the view Intended to be expressed by the exception to be that, even though it be conceded that Bolden was capable of conveying title to plaintiff and Elam, the title which he appears to have conveyed does not purport to be accompanied by a delivery of possession, but, to the contrary, expressly reserves the possession to the grantor, as usufructuary, and that, as the possession of the usufructuary is a legal, and not a precarious, possession, plaintiff, in alleging such possession, has put himself out of court, since the usufructuary possesses for himself and not for the owner. The answer to that argument is that we are dealing with a special condition, created and provided for by a law, which contemplates that there may be an owner and a usufructuary of the same land, and provides the manner in which each may be protected in his rights. As the usufructuary must ordinarily occupy the land, to the exclusion of the owner in order to enjoy his right of usufruct, that law constitutes him, in effect, and with respect to the rights of ownership, the agent or representative of the owner, imposes upon him the obligation of an administrator, and relegates him to .the company of precarious possessors. Thus, he is required to take the same care of the property of which he enjoys the usufruct as though it were his own, and, save in the cases of the father and mother, having the usufruct of the estate of the children, and the seller and donor who reserve the usufruct, he is obliged to give security for the faithful discharge of that obligation, with respect to which the owner has the right to call him to account and hold him responsible in damages. O. O. 557 et seq.; Girard v. New Orleans, 2 La. Ann. 897. And, though he is legally entitled to the possession necessary for the enjoyment of his usufruct, the Civil Code declares:
-“Art. 3441. * * * Those who possess,.not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, cannot acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves, but for another.”
Article 3510:
“ * * * Those who possess for others and not in their own name, cannot prescribe, whatever may be the time of their possession. Thus, farmers, tenants, depositaries, usufructuaries and all those generally who hold by a precarious tenure and in the name of the owner, cannot prescribe on the thing thus held.”
And, as particularly applicable in this case, the Code of Practice (article 47) provides that he who possesses as owner, and he who *1048 is entitled to tlie usufruct, meaning either or both of them, may bring the possessory action when disturbed in the enjoyment of their respective rights. Unless, however, the possession of the usufructuary is also the possession of the owner, the latter would ordinarily be denied the possessory action, and, if the usufructuary be regarded as holding possession for himself alone, the owner would lose his property by prescription.
We, therefore, conclude that, in alleging possession, through his authors in title and usufructuary, plaintiff has made the allegations of real and actual possession required by law for the support of his action, and that the exception under consideration was properly overruled. Taylor v. Telle, 45 La. Ann. 124, 12 South. 118; Handlin v. Lumber Co., 47 La. Ann. 401, 16 South. 955.
[3] The exceptions that plaintiff was not in possession when the suit was instituted, and that Bolden was not in possession, as owner, at the time of plaintiff’s alleged purchase, but occupied the land as the tenant of defendant, may be dealt with as one, i. e., that Bolden was in possession as defendant’s tenant at the date of the sale to plaintiff, and, having no power to change the character of his possession, could not, thereafter, possess as usufructuary, acknowledging plaintiff as owner, and hence that plaintiff could not have possessed through him in that character when the suit was instituted.
Upon the face of the exceptions, therefore, the question of plaintiff’s possession, vel non, is inextricably involved in those of the, validity of the titles exhibited by the litigants, respectively, and of the alleged lease to Bolden, set up by defendant. In other words, if Bolden was the tenant of defendant in June, 1913, under a contract which was binding on the plaintiff and Elam, he could not legally, by virtue of a contract with them, have become the usufructuary of the property, and thus have changed the character of his possession from that of a holder for' defendant to that of a holder for them.
The provisions of the Code of Practice which have been quoted appear, however, to-contemplate that the question of possession shall be dealt with as one of fact alone. Thus the last paragraph of article 49 reads:
“When the possession of the plaintiff is accompanied with all these circumstances [beginning with ‘real and actual possession’] it matters not whether he possesses in good faith or bad faith, or even as a usurper, he shall, nevertheless, be entitled to his possessory action.”'
And the last paragraph of article 53 reads:
“So that when the possession of the plaintiff, or the act of disturbing him is denied, no testimony shall be'admitted, except as to the fact of the possession, or as to the act of disturbance, and all testimony relative to property shall be rejected.”
[4] We have already held that the words “real and actual possession,” as used in article 49, are not to be interpreted literally, and that one person may hold such possession, through another, as he may hold it of more land than he stands, or may lie down, on, or may have inclosed by fencing, and we incline to the opinion that, when one who sues upon a claim of title and the actual occupant of the land concur to the effect that the latter is holding possession for the former, the fact of possession in the claimant must, for the purposes of the possessory action, be regarded as established, even though, as a matter of law, it might not be so held, since the evident purpose of the lawmaker is. to protect acknowledged possession and compel the disturber to assert his title by a direct action.
It may, of course, be argued, and with great force that, where the owner and actual occupant of land makes a sale of it and becomes the tenant of the vendee, and thereafter sells the same land to another, the second vendee cannot, within a month or six weeks, establish the “real and actual possession” for the preceding year which the *1050 law requires for the possessory action, and that, whether such occupant made the first .sale and became the tenant of the first venadee are matters of fact, and, perhaps, of law, which must be determined in order, to decide the question of possession. A further answer to that argument, for the purposes of this case, is that the alleged contract whereby it is said that Bolden sold the land to, and became the tenant of, defendant was not recorded until after the registry of the .act whereby he sold the land to plaintiff and Elam and became the usufructuary thereof, acknowledging them as the owners, and that the first contract was inadmissible in •evidence, because, as to them,' “utterly null and void.” McDuffie v. Walker, 125 La. 152, 51 South. 100; John T. Moore P. Co. v. Morgan’s, etc., Co., 126 La. 866, 53 South. 22; Riggs Cypress Co. v. Hanson L. Co., 127 La. 455, 53 South. 700; Riggs v. Eicholz, 127 La. 745, 53 South. 977; Sorrel v. Hardy, 127 La. 843, 54 South. 122; Washington v. Filer, 127 La. 871, 54 South. 128; Parent v. First Nat. Bank, 135 La. 262, 65 South. 233; Summers v. Clark, 30 La. Ann. 436; Cochrane v. Gilbert, 41 La. Ann. 736, 6 South. 731; Flower & King v. Pearce & Sons, 45 La. Ann. 853, 13 South. 150.
Finding Bolden in possession of the land, under a recorded title, as owner, plaintiff was entirely within his rights in dealing with him as the only person having an interest in the land, and hence as being competent to become the usufructuary under the deed whereby he (plaintiff) became the owner, and no outstanding, unrecorded title from Bolden can be invoked against him to the prejudice of those rights.
We, therefore, conclude that the objection to the admission in evidence of the alleged contract of retrocession and lease between Bolden and defendant and to the testimony offered in support of the same should have ■been sustained, and, in view of that conclusion, have eliminated from this opinion our analysis of that testimony and of the testimony offered in rebuttal.
Judgment affirmed.