## GREGG COMPANY.

*v.*

## UTUADO SUGAR COMPANY.

San Juan, Equity, No. 898.

RESALE OF PROPERTY.

Equity Sale—Purchaser.

　　1. The fact that a property bidder mistakes the scope of his rights and does acts to his own injury does not constitute an equity which the court can notice.

Public Sale—Interest in Land.

　　2. The Act of Congress of March 3, 1893, requires a public sale of interest in land. This applies to a sugar factory annexed to the land, and the civil law distinction between movable and immovable has no application.

Fixtures—Civil Law.

　　3. The old physical test of fixtures growing out of annexation is giving way in modern times to constructive annexation depending on intention, and this is applicable at civil law as well as at

NOTE.—For authorities passing on the question as to whether things placed on land with the intention of annexing them are fixtures, where they are never actually attached, see note in 69 L.R.A. 892.

Gregg Co. v. Utuado Sugar Co.

common law. The fact that the fixture has ceased to operate as such does not change the connection with the land and its results.

Opinion filed August 3, 1918.

---

*Mr. O. B. Frazer* for petitioners, Abarca.

*Mr. C. Coll y Cuchi* for the company and receiver.

*Mr. Charles Hartzell* for creditors.

HAMILTON, Judge, delivered the following opinion:

The property of Utuado Sugar Company in receivership has been offered at public sale more than once by orders of court. It consists of land and the sugar mill or central, for some years operated under lease, but it seems impracticable to lease it any longer. It has been offered for sale more than once without securing a purchaser.

All parties interested have desired to see the property sold, inasmuch as there will probably be little or no income from it under the circumstances, and some months ago petitioners Abarca offered in writing the sum of $80,000. On June 14, 1918, the court made an order approving this offer and directing the attorney for the company and receiver to draw the proper decree. While it was not incorporated in the terms of the order, the court stated at the time of making the order that it was doubtful whether there could be any sale except at public auction after advertisement, unless, perhaps, by consent of all parties in interest, and that one of these parties must be the

Gregg. Co. v. Utuado Sugar Co.

trustee under the mortgage, as otherwise a purchaser might only get an equity of redemption instead of the title itself. Attorneys in interest were to furnish authorities on the subject, but none have ever been able to furnish any to the effect that this opinion is incorrect. As to public sale, the opinion of the court was based upon the Act of March 3, 1893, 27 Stat. at L. 751, chap. 225, Comp. Stat. 1916, §§ 1640–1642, which says:

Sec. 1. "That all real estate or any interest in land sold under any order or decree of any United States court shall be sold at public sale at the courthouse of the county, parish, or city in which the property, or the greater part thereof, is located, or upon the premises, as the court rendering such order or decree of sale may direct."

Sec. 2. "That all personal property sold under any order or decree of any court of the United States shall be sold as provided in the first section of this act, unless in the opinion of the court rendering such order or decree, it would be best to sell it in some other manner."

Sec. 3. "That hereafter no sale of real estate under any order, judgment, or decree of any United States court shall be had without previous publication of notices of such proposed sale being ordered and had once a week for at least four weeks prior to such sale in at least one newspaper printed, regularly issued and having a general circulation in the county and state where the real estate proposed to be sold is situated, if such there be. . . . Said notice shall, among other things, describe the real estate to be sold. . . ."

Later John B. Huyke filed an offer of $85,000 for the property, and thereupon Abarca filed an application raising his offer also to $85,000 and requesting that the machinery, as con-

stituting personal property and being the major part of the value, be conveyed to him direct by private conveyance for $70,000, and offering to bid $15,000 for the real property when exposed to sale. Huyke now offers to bid $90,000.

1. There is no doubt that at the time the order of approval was entered all parties in interest supposed that the Abarca offer was not only the best which could be obtained, but should, if possible, be accepted. The court felt unable to make a decree of private sale because of the Statute of 1893, unless the trustee under the mortgage came in and agreed to a private sale. This the trustee has not done. He has appeared, but opposes the private sale and asks that the sale be public.

It is not perceived that Abarca has any equity in the matter. He shows that, based upon the order, he went out and made contracts of such sale of the different parts of the property, and may suffer loss if he does not carry them out. This is greatly to be regretted; it is due, however, not to any binding force of the order, but to Abarca's misconstruction of his rights in the premises. The court would willingly complete the transaction upon which all parties had begun, but could only do so upon the fulfilment of the two conditions mentioned at the time. This was the object in deciding to "approve" rather than "accept" the offer, and in directing the making of an order "proper" to the occasion, that is to say, either for a conveyance after consent had, or an order of public sale at which Abarca would be able to make a public bid corresponding to the private bid made in court.

2. It is contended that the statute necessitates a public sale only for land, that is to say, realty in the common-law sense, and does not apply to movables under the civil law. There is

no reason for holding the statute not in force in Porto Rico on the ground that it is locally inapplicable under § 9 of the Organic Act. Of course, as a matter of law, the classification of property into movable and immovable may be made by local legislation, for this is a civil matter which is controlled by local law here as it is in Louisiana. It may well be, however, that Congress, while willing to leave this principle of lex rei sitæ undisturbed as far as local matters are concerned, prefers to have sales based upon mortgages which may be held by strangers controlled by a general law as to public sales. There is no inconsistency in supposing that the two classifications may coexist in Porto Rico. They have been held to coexist in Louisiana in the case of Girard v. New Orleans, 2 La. Ann. 897. There the local law held slaves to be immovables, under the general principle obtaining in civil-law countries that whatever is necessary to a farm constitutes with it a unit. This rule comes down from early Roman times, when Rome itself was a farming community and res mancipi embraced everything connected with the use of a farm. Stephen Girard in his will left slaves to the city of New Orleans, which had the right under its charter to hold real estate only within the city limits. The court held that, although slaves were immovables, they were not real estate, and so did not come within the implied prohibition of the charter. Similarly, in the case at bar, it is not material whether the machinery in question is part of the immovable property or not. It might be immovable in the civil-law sense, and still be real estate in the sense used by the Federal statute. It is not necessary to try to whittle a Federal statute down to fit civil-law conditions. It means what it says and is applicable in Porto Rico as well as anywhere else.

Gregg Co. v. Utuado Sugar Co.

It is, therefore, not material that the Civil Code, § 334, includes in the term immovables: "5. Machinery, vessels, instruments or implements intended by the owner of the tenement for the industry or works that he may carry on in any building or upon any land and which tend directly to meet the needs of said industry or works."

What is embraced in the statute regulating procedure in the Federal court must be determined by common-law, not civil-law, principles. This is not in any sense an abolition of the civil law, nor does it affect substantive civil law in any way. It is simply part of the Federal procedure, and says that in a proceeding in the Federal court certain things are to be handled in a certain way for reasons of general public policy, no matter whether they be called movable or immovable.

3. On the other hand the law cannot mean that all the principles connected with fixtures at common law and by American statutes are to be imported into Porto Rico by this Statute of 1893, even for purposes of sales in the Federal court.

It may be, however, that the distinctions as to movables and fixtures are not material in this case.

Formerly, at common law, anything physically annexed to the soil became real property, mere weight being insufficient. Placing machinery on land for steadiness is not material. Hellawell v. Eastwood, 6 Exch. 295, 155 Eng. Reprint, 554, 20 L. J. Exch. N. S. 154. The modern tests are annexation, adaptability, and intention (Teaff v. Hewitt, 1 Ohio St. 511, 59 Am. Dec. 634), but the old physical test is giving way to that of constructive annexation, depending on intention. In modern times the growth of industry has been such as to create exceptions in favor of tenant as against landlord, and less strongly

as between mortgagor and mortgagee. Where machinery and the building are separately owned, much is allowed in favor of trade fixtures and of what is called the away-going tenant. Inclosing machinery in a building does not necessarily make it realty. 19 Cyc. 1042.

So much for the common law. At civil law also the principle does not seem to be very different. The Statute of 1893 has been applied in civil-law jurisdictions like Louisiana. Godchaux v. Morris, 57 C. C. A. 434, 121 Fed. 482. The property in question was mortgaged and recorded as a whole under the provision in the Mortgage Law, art. 2, for the record of all instruments as to "real rights," "Primero. Los titulos traslativos del dominio de los inmuebles o de los derechos, reales impuestos sobre tos mismos." Such recording is at least an administrative determination that the property in question, mainly sugar central machinery, is immovable. And at civil law a distinction corresponding to that connected with fixtures at common law is well known. Manresa, Comentarios, vol. 3, p. 27, commenting on art. 334 (5) above cited, has no doubt that everything annexed to the soil is immovable. The distinction at civil law, as at common law, relates to whether the objects in question, otherwise movable, are incorporated or annexed to an immovable, for the union fixes the destination, and on account of it the articles for the time being lose their condition of movable, although ultimately the situation may be different if the union is dissolved.

It would appear, therefore, that so far as concerns the machinery in question it must be regarded, whether at civil or at common law, as annexed to the soil. It is quite true that it is more valuable than the land, and there is a civil-law principle that

Gregg Co. v. Utuado Sugar Co.

some things, like canvas, yield to the ownership of work or accessory paced upon it, as in making a painting. There is no contention, and there could be no serious contention, however, that the legal categories are so far transformed that the land in this case becomes annexed to the machinery. Under any system of law, if there is any effect it is to make the machinery over the land.

It is contended in the case at bar that while, therefore, the machinery might be considered as having been temporarily incorporated with the immovable, the central has ceased to run and probably will never be operated again on its present site, and therefore the temporary connection must be held to have terminated.

This cannot be conceded. The machinery and the land are treated as one in the recorded mortgage, have always been operated together, and cannot be considered separate until they are treated separately, that is to say, the machinery is removed from the land. The character impressed remains until the owner has changed it. As the whole plant stands now at the time of this court proceeding, under which Abarca made his bid, the unity has not been disturbed and the machinery is still attached to the land. Hill v. Farmers & M. Nat. Bank, 97 U. S. 450, 453, 24 L. ed. 1051, 1053. In the case at bar the intent and conduct of the parties are equally conclusive.

From whichever point of view the matter is considered, whether civil or common law, the machinery and the land, belonging as they do to one owner, and long used together, remain a unit, and that unit must be considered as an interest in land. Under the Statute of 1893, therefore, it is not possible to sell the machinery apart from the land. The result is that the peti-

tion of Abarca cannot be granted, and that the property must be sold at public auction under the statute.

4. The court, however, wishes to carry out what was in its mind at the time of making the order approving the offer of Abarca, and will, at the proper time, make an order that, while a public sale has to be ordered, no offer less than the $85,000 offered by Abarca will be considered. The sale must be begun at that price so as to give Abarca opportunity to bid that amount. There would, however, be nothing gained by having a sale unless there is some binding bid, and it will not be ordered until a deposit is made by one party or the other of $15,000, to be forfeited if $85,000 is not realized at the sale. This, however, relates only to the minimum at which the sale shall be started, and is not meant to control in any way the higher price, if any, at which the property may be adjudged to the successful bidder. Upon such deposit, in ten days a new order of sale will accordingly be made in accordance with the Act of 1893. The petition for the separate sale of the machinery is refused.

It is so ordered.