**JOHNSON et al. v. HENDERSON et al.**

No. 5826.

Court of Appeal of Louisiana.
Second Circuit.
March 31, 1939.

Rehearing Denied April 28, 1939.

Writ of Certiorari and Review Denied
June 26, 1939.

Simon Herold, of Shreveport, for appellants.

Wallace & Stinson and R. H. Lee, all of Benton, for appellees.

TALIAFERRO, Judge.

This is a jactitation suit. The plaintiffs are: Mrs. Mamie Ester Strayhan Johnson, Mrs. Willie Gray Strayhan Britt, Mrs. Roxie Strayhan Dawson, Mrs. Mamie P. Strayhan Graham, Mrs. Alice Strayhan Hollier and Grover H. Britt. They allege themselves to be the owners and in the actual physical possession of the following described land situated in Bossier Parish, to-wit:

The W½ of Section 2, East of Red River; the East fractional part of the West½, East of Lots 1, 2, 3 and 6 of Section 11, Township 21 North, Range 14 West, containing 122.00 acres, more or less.

They further allege that their father, J. F. Strayhan, actually and physically possessed said lands from September 16, 1899, on which date he purchased lands adjoining on the east and west sides thereof, until his death; that they have in like manner been in possession thereof since his death. It appears, however, that Grover H. Britt's wife and not him is an heir of Strayhan.

Plaintiffs charge that defendants, to-wit: Max Henderson, Mrs. Vashti Henderson, Martha Henderson, Maston Henderson, Margery Henderson, Mrs. Marcia Gray Bryan, the widow and heirs of James M. Henderson, deceased; and John Wagner, Mrs. Elizabeth Nattin Moressi and Miss Grace H. Larkin, successors in title to James M. Henderson, deceased, are slandering their title to said lands by having caused to be placed of record in Bossier Parish, a tax sale thereto purporting to have been made to said Henderson, deceased, on June 15, 1929.

Plaintiffs sue for damages caused by the alleged slander, and pray that defendants be ordered to either disclaim any title whatever to the lands or to exercise herein such rights as they may have against same; and for judgment cancelling said tax deed. They do not pray to have their alleged possession recognized, but do pray for "general and equitable relief".

Other lands are described in the petition and as to these other persons were impleaded. After an exception of misjoinder was sustained, plaintiffs dismissed the suit as to these lands and these defendants.

■ The remaining defendants filed what is referred to as an exception of no right of action in which they affirmatively allege that plaintiffs are not now nor have they ever been in the actual, physical possession of said lands, and therefore have no right to institute and prosecute this suit. This plea squarely made plaintiffs' alleged possession of the lands an issue, and a trial was had and evidence at length introduced thereon. The trial judge ruled that defendants, under their plea or exception, carried the burden of proof. If there was error in this ruling, it is not urged here. We are not asked to pass thereon. To the extent that the exception put at issue plaintiffs' alleged possession, it was in reality an answer. Young v. Town of Morgan City, 129 La. 339, 56 So. 303; Williams' Heirs v. Zengel, 117 La. 599, 42 So. 153.

There was judgment for defendants sustaining the "exception of no right of action" and dismissing plaintiffs' suit. They have appealed.

The land in Section 2 contains about 32.64 acres. It is one mile long, north and south. The plat in the record indicates that the tract is between 160 and 170 yards wide at its south end and not over 40 yards wide at its north end. It was probably created by the river's recession. The tract in Section 11 is also a mile long on its east side. Its west line (being common with the east line of Lots 1, 2, 3 and 6) is parallel, or nearly so, to its east line for practically one-half of a mile and from that point it gradually curves northeasterly until it reaches the north section line at the southeast corner of the tract in Section 2. This tract, according to the plat, contains 89.36 acres. Said lots lie between it and Red River. Neither tract, apparently, has been surveyed or platted into lots by the state or United States.

■ It appears that in September, 1899, J. F. Strayhan acquired lands on both sides of this 89.36-acre tract in Section 11, and lands adjoining the tract in Section 2 on its east side. The deed to him was excluded from evidence because it did not include the lands involved herein. It also appears that Strayhan lived on and cultivated a large area of the lands described in his deed. His children, plaintiffs herein, were reared thereon. After his death they partitioned the succession property, but the tracts in question were not included. Therefore, if said heirs have a proprietary interest therein, it is in a state of indivision; and since their father, from whom they inherited, had no deed to the

land, possession thereof by him or them must of necessity be restricted to those portions which he or they actually and physically detained.

It is admitted that these two tracts were adjudicated to J. M. Henderson, now deceased, in June, 1929, for due and delinquent taxes of the year 1928. The deed was not offered in evidence. It is not disclosed how Mrs. ·Moressi and Miss Larkin acquired interest therein.

On November 26, 1937, Mrs. Hollier, a plaintiff, executed a notarial act of sale to J. J. Waggoner, same as John Wagner, a defendant, wherein she sold and conveyed to him, inter alia, lots 1, 2, and 3 of Section 11 and that part of said 89.36-acre tract in Section 11 lying east of these lots. This description excludes from the 89.36-acre tract 26 acres or about off of its south end, which lies east of said lot 6. It may be accurately described as being that part of SE¼ of SW¼ of Section 11 east of lot 6.

■ The record discloses that as a concomitant of the negotiations between Mrs. Hollier and Waggoner preliminary to closing said sale, it was understood that the interest of the Henderson heirs and other defendants in that part of the 89.36-acre tract she was selling him, would also be deeded to Waggoner; and pursuant to this understanding, these parties did execute such a deed to Waggoner for the price of $200. The price to be paid to Mrs. Hollier was reduced to that extent. Mrs. Hollier was at the time occupying a house and had in cultivation about five acres in the southern part of the 63.36-acre tract included in her deed to Waggoner. She also had approximately 35 acres of it enclosed in pasture. Her possession extended back for several years, but she conceded that defendants held a good title thereto and, in fact, appreciated that she was holding possession through their sufferance. Before Henderson died, she had an understanding with him to the effect that she was given a preference to acquire this part of the 89.36-acre tract. His heirs and others in interest simply carried out his agreement with her. Waggoner went into possession of the lands embraced in these deeds to him but such possession was less than one month old when this suit was filed. It is sufficient, however, to supplant the possession, regardless of its nature or character, of the other plaintiffs as heirs of Strayhan and, for this reason, in addi-tion to others assigned herein as to this tract, they are without right to prosecute this action.

■ It is contended that the possession of Mrs. Hollier was in behalf of herself and her co-heirs and that it enured to their benefit, but we do not think the record sustains this position; rather, it negatives the thought that she was even possessing for herself as owner, particularly after Henderson's tax purchase in 1929. Whatever be the nature and extent of her possession, it certainly passed to Waggoner along with the possession of the other tracts conveyed to him. She cannot now be heard to contend otherwise. Dooley v. Gibson, 32 La.Ann. 192.

On October 27, 1934, plaintiff, Grover H. Britt and O. L. Riddle entered into a contract of lease to run for five years, beginning January 1, 1935, for $50 per annum, which covered one-fourth interest in the two·tracts involved herein and another in Section 14, below. Riddle cultivated some acreage in the southern end of the tract in Section 2 and paid rent to Britt for the year 1935. He declined to pay the 1936 rent, we assume, because Henderson or his heirs was asserting claim thereto. A lawsuit ensued and defendants intervened and claimed the rent. Britt won in the Justice of Peace Court and on appeal to the District Court, the judgment was reversed and defendants herein adjudged entitled to the rent. The record of this suit is not in the present transcript. Evidently the ownership of the land was at issue. Britt thereafter demanded payment of no more rent from Riddle.

Desiring to deal with whom, judging from the outcome of the suit, he believed to own the land, Riddle, on September 22, 1936, leased from the defendants herein for 1937, 1938 and 1939, the two tracts involved in this suit. Since that time he has held and possessed the tract in Section 2, as lessee, and has paid to the lessors, defendants herein, annual rentals as they matured.

■ Appellants' counsel, as regards this tract, in view of the facts, appropriately says that the question of possession turns upon for whom does Riddle now possess? It is argued that under Article 3446 of the Revised Civil Code, he was without right to change the character and nature of the possession of the land which devolved upon him under the Britt lease, which in reality only covered a one-fourth

interest. A complete answer to this argument is this: He did not personally change or attempt to change the nature of this possession. The transition came about as the result of a lawsuit. If Britt was not entitled to the rent, evidently it was found that he was not the owner of the land. Riddle leased from defendants herein only after his own contract with Britt had virtually been annulled by a competent court. After the new lease, Riddle then possessed for and on behalf of the defendants and has so possessed for over two years. This is sufficient to disclose lack of that character of possession in Britt necessary to maintain a slander of title suit.

We think the situation different as regards the 26-acre tract.

Mrs. Graham, one of the plaintiffs, acquired in the partition of her father's estate, land on each side of this tract. In the year 1934, she leased to O. D. Riddle for a period of five years the tracts allotted to her in the partition and also this 26-acre tract. Riddle was unwilling to execute the lease contract, which is in writing, unless this tract was included, as it lay between and separated the other tracts. It does not appear that this tract is now nor has it heretofore been entirely enclosed. One or more roads traverse it. These lead to and over the adjacent tracts. Since the lease to Riddle, this land has served as a valuable adjunct to the adjacent tracts, but Riddle has not cultivated any portion of it. His actual physical possession of the adjacent tracts has constructively embraced the 26-acre tract, as the three tracts are contiguous and are each described in the lease. We think this possession by him, as tenant for Mrs. Graham, sufficient for her to predicate a slander of title suit upon.

A jactitation suit bears marked resemblance to a possessory action, in fact, it has been held to be a form of that action, though differing from it in material respects. Dalton v. Wickliffe, 35 La.Ann. 355; Miller v. Albert Hanson Lumber Company, 134 La. 225, 63 So. 883; Bell v. Saunders, 139 La. 1037, 72 So. 727; Crowell & Spencer Lumber Company v. Burns et al., 191 La. 733, 186 So. 85.

So far as regards the character of possession necessary to maintain such an action, we perceive no difference between it and the possessory action.

It has been held that:

"Possession acquired by entering and occupying part of land with intention of possessing entire tract included within boundaries will support possessory action." Collins v. Heath, 15 La.App. 370, 131 So. 479; Sallier v. Bartley, 113 La. 400, 37 So. 6; Jones v. Goss, 115 La. 926, 40 So. 357; Meraux & Nunez v. Gaidry et al., 171 La. 852, 132 So. 401; Revised Civil Code, Article 3457 et seq.

O. D. Riddle knew that in the lease to O. L. Riddle by defendants, the whole of the 89.36-acre tract was included. No friction arose from this fact or its knowledge by him. He continued to pay the full amount of annual rent due Mrs. Graham under the lease with her and at no time informed her that he was not possessing this 26-acre tract as her tenant. It is clear he did not in fact nor intended to alter the character of his possession of the land after learning it was included in his son's lease. The son has made no effort to disturb the father's possession; nor has he asked him to pay rent. O. D. Riddle admits that since the lease from defendants ran to his son, he felt secure in his possession of the land under the lease from Mrs. Graham. It is obvious, therefore, that the lease to O. L. Riddle has not to any extent affected the character of O. D. Riddle's possession as tenant of Mrs. Graham.

Anent the action of jactitation, with special reference to the issues herein discussed, see the Tulane Law Review, Volume 12, page 254, et seq. This article contains exhaustive discussion of the action with footnote references to practically all the cases in Louisiana dealing therewith.

For the reasons herein assigned, the judgment appealed from is affirmed, insofar as it holds that plaintiffs are not in the actual physical possession of the land in Section 2 and the 63.36-acre tract in Section 11; and, therefore, not in a position to institute and prosecute this action; but said judgment as regards the said 26-acre tract is annulled, reversed and set aside and the actual physical possession thereof by Mrs. Graham is recognized.

It is therefore ordered that defendants institute against Mrs. Mamie P. Strayhan Graham, plaintiff, within sixty (60) days from the finality of this decree, a suit in revendication of their rights to said 26-acre tract, and in default of so doing with-

in said period, defendants will be thereafter forever barred from setting up any right, title or interest therein.

It is further ordered that defendants pay the costs of this appeal and, except as amended or reversed hereby, the judgment appealed from is affirmed.