279 So.2d 660 (1972)
ALL-STATE CREDIT PLAN NATCHITOCHES, INC.
v.
Estelle RATLIFF et al.
No. 52048.
Supreme Court of Louisiana.
December 11, 1972.
On Rehearing June 11, 1973.
*661 Whitehead & McCoy, Kenneth D. McCoy, Jr., Natchitoches, for plaintiff-applicant.
Watson, Murchison, Crews & Arthur, R. Raymond Arthur, Natchitoches, for defendants-respondents.
McCALEB, Chief Justice.
This petitory action presents for consideration the single question whether a third party, having purchased real property at sheriff's sale, may use the possession of the person placed in possession of the property as heir in ex parte succession proceedings by a court of competent jurisdiction to acquire such property by the prescription of ten years provided by Act 584 of 1960 (now R.S. 9:5682).
Plaintiff, All-State Credit Plan Natchitoches, Inc., instituted the suit seeking to be recognized as owner of a 40-acre tract of land, with improvements, situated in Natchitoches Parish.[1] When the favorable judgment the corporation secured in the district court was reversed by the Court of Appeal (254 So.2d 701), we granted this *662 writ of review. 260 La. 410, 256 So.2d 292.
The facts of the case, which have been stipulated by the parties, are as follows: The property involved was acquired during the marriage of Robert and Shallot Wallace. Robert Wallace died October 11, 1952. His succession was duly opened in a court of competent jurisdiction, although therein Lizzie Wallace Odums, a daughter, incorrectly stated she was the sole and only heir of her father. However, she was recognized as such, and decreed to be the owner of his undivided half interest in the property by judgment of January 12, 1954, and it is admitted in the stipulation that her possession of the property from that time on was sufficient "for the requisite period, and in the manner and character required" to form the basis of the prescriptive period provided in R.S. 9:5682, if otherwise applicable.
Actually, there were then living five children of James Wallace, a predeceased brother of Mrs. Odums, four of whom are the defendants in the case.[2]
Shallot Wallace died August 8, 1962, and her succession was similarly opened. Upon representation that she was the sole heir, Lizzie Wallace Odums was recognized as the owner of her mother's undivided half of this property by judgment of May 14, 1968. In addition to the five children of her predeceased son, James Wallace, Shallot Wallace left two children by a former marriage to Willis Hall, as well as a grandchild of a predeceased child of this union. Mrs. Odums acquired the rights of the Hall heirs, and also the rights of one of the children of James WallaceBessie Wallace Englishand it is admitted none of these persons now has any interest in the property. They were not joined as defendants.
On September 3, 1968, Lizzie Wallace Odums and her husband, Man Lee Odums, mortgaged the property. This mortgage, including the note, in the amount of $8,160, was held in due course by the plaintiff, All-State Credit Plan Natchitoches, Inc., when, in 1969, Mr. and Mrs. Odums filed a voluntary bankruptcy petition in the federal court. The property was there listed as an asset of the couple and was advertised for adjudication to the corporation after it paid the foreclosure fees to the court. On June 29, 1970, shortly prior to the adjudication date, three of the defendants enjoined the trustee in bankruptcy from proceeding with the adjudication. Thereafter, the bankruptcy court, disclaiming any interest in the property, permitted plaintiff to proceed with its claim in the state court.
In August of 1970, plaintiff foreclosed on the mortgage and purchased the property at sheriff's sale on October 7, 1970, no effort having been made by defendants to enjoin this sale. It instituted this action January 11, 1971, seeking to be declared owner of the property, alleging the defendants were claiming adverse ownership.
R.S. 9:5682 provides:
"An action by a person who is an heir or legatee of a deceased person, and who has not been recognized as such in the judgment of possession rendered in the succession of the deceased by a court of competent jurisdiction, to assert any right, title, or interest in any of the property formerly owned by the deceased against a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased in this judgment of possession, is prescribed in ten years if the third person, or his ancestors in title, singly or collectively, have been in continuous, uninterrupted, peaceable, public, and unequivocal possession of the property for *663 such period after the registry of the judgment of possession in the conveyance records of the parish where the property is situated.
"As used herein, `third person' means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession."
It is plaintiff's position that the prescriptive period began to run from the recordation of the judgment in the succession proceedings, and that in availing itself of the ten-year period under R.S. 9:5682, it is entitled to the peaceful and unequivocal possession of the heir decreed to be the owner of the property in the succession judgment rendered by a court of competent jurisdiction.
Defendants profess Mrs. Odums, who was placed in possession by judgment as heir, is not an "ancestor in title" within the intendment of the statute, since she had no actual title whatever to the land but was, instead, a joint owner, and that, as such, under our civil law, she never acquired title against the other heirs by prescription. It is further asserted by defendants that under our decision in Trahan v. Brossard, 251 La. 714, 206 So.2d 82 (1968), the person pleading prescription must show that he, himself, has been in possession of the property "for ten years after the registry of the judgment of possession," and plaintiff did not secure a title from the heir until the sheriff's sale on October 7, 1970. It is argued that, under the Trahan decision, the purpose of the statute is to afford protection to third parties from stale claims of forced heirs who have been deprived of their rights only after a third party has possessed the property for a ten-year period, even though in bad faith.
In sustaining the contention of defendants the Court of Appeal resolved that the decision in Trahan v. Broussard, supra, "and also the express wording of the statute itself, is unambiguous and must lead to the conclusion that the ancestors in title of the third person cannot be heirs or legatees of the deceased as recognized in the judgment of possession."
The appellate court is in error. While it is true that, in discussing the conditions that must be met before a third person can avail himself of the prescription provided in R.S. 9:5682, the court stated in the Trahan case that "the person pleading prescription must show that he has been in continuous, uninterrupted and unequivocal, peaceable possession of the property for ten years after the registry of the judgment of possession in the conveyance records," the issue before us now was neither raised nor decided in that matter. There, the third person had been in possession of the property for ten years from the date he purchased it at sheriff's sale in a partition proceeding instituted following the close of the succession and, hence, it was unnecessary to decide whether the prior possession of the heir could be employed to make up or complete the ten year prescription. That case is only authority for the position, (1) that the nature of the prescription provided by R.S. 9:5682 is acquisitive, and (2) that the bad faith of a third person does not prevent him from acquiring by the prescription afforded under the statute.
As stated in its title, Act No. 584 of 1960 (now R.S. 9:5682) was adopted to provide that "an action by an heir or legatee * * * not recognized as such in the judgment of possession * * * to assert any right to property formerly owned by the deceased * * * is prescribed in ten years" if the property has been acquired by a third person and he "or his ancestors in title, or both" have had possession of the property for this period.
The body of the statute characterizes the type of possession necessary to cut off the claims of defrauded heirs in and to the property, i. e., it must be "peaceable, public, and unequivocal possession" by the "third person, or his ancestors in title, singly, or collectively." It further stipulates *664 the time when the prescriptive period begins, i. e., "after the registry of the judgment of possession in the conveyance records of the parish where the property is situated." And, inasmuch as the statute specifically provides that the third person must have acquired the property "from or through a person recognized as an heir or legatee * * * in this judgment of possession," that heir or legatee, of necessity, must be an ancestor in title of the third person. As in the instant case, the plaintiff acquired this property directly from Mrs. Odums (and her husband) when it foreclosed on the mortgage executed by them affecting the property. (The emphasis has been supplied.)
To hold otherwise would require that we delete from the statute the provision that the peaceable and unequivocal possession of a "third person, or his ancestors in title, singly, or collectively," may be availed of to make up the ten-year period, which begins with the "registry of the judgment of possession in the conveyance records," and that the third person must have acquired the property "from or through a person recognized as an heir or legatee of the deceased in this judgment of possession."
The statute thus gives third parties relying on the public records in a succession matter a special prescriptive benefit as against heirs who permit a long period of time to elapse before asserting their claims to an inheritance.[3]
For the reasons assigned, the judgment of the Court of Appeal for the Third Circuit is annulled and set aside and the judgment of the district court is affirmed.

ON REHEARING
BARHAM, Justice.
The issue to be decided in this petitory action is whether a third party holding title to property under a foreclosure deed may acquire that property against the real owners by the prescription of 10 years provided in R.S. 9:5682 (Act 584 of 1960), by tacking on the possession of the person placed in possession of the property as heir in ex parte succession proceedings by a court of competent jurisdiction.
Plaintiff filed this petitory action to be recognized as sole owner of a 40-acre tract of land, with improvements, situated in Natchitoches Parish.[1] The trial court held in favor of plaintiff. The Third Circuit reversed. 254 So.2d 701. Certiorari was granted on All-State's application.
The property involved in this action was acquired during the marriage of Robert and Shallot Wallace. Robert Wallace died October 11, 1952. His succession was duly opened in a court of competent jurisdiction, although Lizzie Wallace Odums, a daughter, incorrectly stated that she was the sole and only heir of her father. She was recognized as such, and decreed to be the owner of his undivided half interest in the property by judgment of possession on January 12, 1954.
In fact, Robert and Shallot Wallace had a son in addition to Lizzie Wallace Odums. This predeceased son left five legitimate children who were entitled to represent him *665 in the succession of Robert Wallace, four of whom are defendants in this case.[2]
Shallot Wallace died August 8, 1962, and her succession was similarly opened. Lizzie Wallace Odums again represented that she was the sole heir, and was recognized as the owner of her mother's undivided half of this property by judgment on May 14, 1968. In addition to the five children of her predeceased son, Shallot Wallace left two children by a former marriage to Willis Hall, as well as a grandchild of a predeceased child of that union. Lizzie Wallace Odums had acquired the interests of all of these parties in the subject property, as well as the rights of Bessie Wallace English, one of the children of James Wallace (the predeceased son), so none of these persons now have any interest in the property, and none of these individuals were made defendants herein.
On September 3, 1968, Lizzie Wallace Odums and her husband, Man Lee Odums, mortgaged the property. This mortgage, including the note in the amount of $8160.00, was held in due course by the plaintiff, All-State Credit Plan Natchitoches, Inc. In early 1969, Lizzie and Man Lee Odums filed a voluntary petition in bankruptcy, listing the property as an asset. All-State paid foreclosure fees to the bankruptcy court, and the property was advertised for adjudication to it. On June 29, 1970, shortly before the adjudication date, three of the defendants enjoined the trustee in bankruptcy from proceeding with the adjudication. The bankruptcy court subsequently disclaimed any interest in the property to permit the parties to proceed with their claims in the state courts.
In August of 1970, plaintiff foreclosed on the mortgage. It purchased the property at sheriff's sale on October 7, 1970; no effort was made by the defendants to enjoin this sale. Subsequently, All-State instituted this petitory action to be declared owner of the property free of defendants' adverse claims. Plaintiff relied on R.S. 9:5682 to maintain its acquisitive prescription of the interests of the defendants in the succession of their grandfather, Robert Wallace, which had been settled some 16 years before. Plaintiff conceded that the defendants were entitled to an interest in the succession of their grandmother, Shallot Wallace, which would amount to an undivided 8/100 interest in the property. If acquisitive prescription is not maintained in favor of plaintiff, then the defendants would be entitled to 28/100 undivided interest in the property as heirs inheriting in both successions.
The statute relied on by All-State, R.S. 9:5682, provides:
"An action by a person who is an heir or legatee of a deceased person, and who has not been recognized as such in the judgment of possession rendered in the succession of the deceased by a court of competent jurisdiction, to assert any right, title, or interest in any of the property formerly owned by the deceased against a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased in this judgment of possession, is prescribed in ten years if the third person or his ancestors in title, singly or collectively, have been in continuous, uninterrupted, peaceable, public, and unequivocal possession of the property for such period after the registry of the judgment of possession in the conveyance records of the parish where the property is situated.
"As used herein, `third person' means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession."
This provision is located in the Civil Code Ancillaries section of the Revised Statutes dealing with prescription; thus any interpretation of it must be in light of the *666 provisions of the Code itself. Under our Civil Code, ownership can never be lost by the failure to exercise itonly by the acquisition of ownership by another through possession sufficient to acquire it through an acquisitive prescription. La. Civ.Code Art. 496.[3] In Trahan v. Broussard, 251 La. 714, 206 So.2d 82 (1968), we recognized that the prescription in R.S. 9:5682 was acquisitive.
The requirements for acquisitive prescription of immovables are set out in Articles 3473, 3474, and 3475 of the Civil Code. They provide:
"Art. 3473. The ownership of immovables is acquired by a longer or shorter time, accordingly as the possessor has been in good or bad faith, as laid down in the following paragraphs."
"Art. 3474. Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time."
"Art. 3475. Immovables are prescribed for by thirty years without any title on the part of the possessor, or whether he be in good faith or not."
The determinative factor as to whether immovables are acquired by the longer or shorter prescription, then, is good faith. When the statute is considered in pari materia with the Civil Code articles, it is obvious that the possession referred to by the Legislature is good faith possession.[4] The intention of the Legislature is further evidenced by the fact that the language of R.S. 9:5682 is taken verbatim from Civil Code Article 3487, dealing with good faith prescription of ten years: "* * * continuous and uninterrupted, peaceable, public, and unequivocal * * *."
When the statute was enacted in 1960 as Act 584, the Legislature was attempting to balance between the opposing interests involved: protection of inheritance rights, especially against possible fraud or abuse of succession procedure; and stabilization of titles, through affording greater prescriptive benefits where third persons rely upon succession judgments. As pointed out by the dissent in Trahan, the purpose of the statute was to make the judgment of possession an act translative of title. It was intended to make ordinary 10-year prescription principles applicable where third persons were involved, and to legislatively overrule the prior jurisprudence in conflict with this interpretation.[5] By the Trahan interpretation of the statute, an ex parte judgment of possession (which is only prima facie evidence of right to possession and heirship under Code of Civil Procedure Article 3062) not only is made translative of title, but also is given greater effect than judgments in adversary proceedings (which under Code of Civil Procedure Article 2004 may be annulled for fraud at any time within a year after the fraud is discovered).
In light of the authorities cited and the purpose of the statute, we overrule Trahan v. Broussard insofar as it fails to recognize the requirement of good faith for the 10-year prescription in R.S. 9:5682.
*667 As to the issue of ancestor in title, the statute provides: "* * * a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased in this judgment of possession * * *." Thus the heir or legatee who transfers the property to the third party is the third party's ancestor in title. The phrase is analogous to the term "author" as defined in Civil Code Article 3494,[6] which itself uses the term "ancestor in title" interchangeably with "author". In the instant case. Lizzie Wallace Odums was the ancestor in title of All-State Credit; the Court of Appeal erred in holding that she was not his ancestor.
However, All-State cannot tack on Lizzie Wallace Odums's 16 years of possession because this was bad faith possession. Her bad faith is evidence by her false allegations of sole heirship in both of her parents' successions, and by the fact that she acquired the interest of some of the heirs in the subject property. As to the other heirs, Lizzie Wallace Odums possessed for them as co-owners, since one heir cannot prescribe against his co-heirs.
All State cannot benefit from Lizzie Wallace Odums's wrongful possession of 16 years. Plaintiff acquired the property on October 7, 1970. The 10-year prescription began to run from that time. Thus All-State has not held the property the requisite time, and the property is subject to the 28/100 interest of the defendants.
For the reasons assigned, the judgment of the Court of Appeal is affirmed at plaintiff's costs.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by SUMMERS, J.
SUMMERS, Justice (dissenting).
Shallot Bryant was first married to Willis Hall, of which union three children were born, Willis Hall, Jr., Nellie Hall and another daughter who predeceased her mother. At her death the predeceased daughter was survived by a child named Samuel E. Ben. This child in turn survived his grandmother Shallot Bryant. When Shallot Bryant's marriage to Willis Hall was dissolved, she married the second time to Robert Wallace. Two children were born of this latter union, Lizzie and James Wallace. James, the son died prior to his mother and father. He was survived by his widow Rozelia White and five children, issue of the union: Estelle, Bessie, Leamon James, Jennie Lee and Blanchie Lee Wallace.
While married to Shallot Bryant, Robert Wallace acquired forty acres of land designated as the northwest quarter of the southeast quarter of section 4, township 9 north, range 9 west, in Natchitoches Parish, Louisiana. The property therefore belonged to the community of acquets and gains existing between Robert Wallace and Shallot Bryant.
Thereafter, Robert Wallace departed this life on October 11, 1952. His succession was opened in Natchitoches Parish, where he was domiciled, upon the petition of his widow Shallot Bryant and his daughter Lizzie Wallace. Lizzie was then married to Man Lee Odums. The petition represented that Robert Wallace died intestate, and that his sole heir was his daughter Lizzie. Other allegations represented that the forty acres acquired while decedent *668 was married to Shallot Bryant was community property. It was then alleged Shallot should be recognized as surviving widow in community entitled to the ownership of an undivided one-half of that property and to the usufruct of the other undivided one-half. According to the representations in these proceedings, Lizzie Wallace should be recognized as the sole heir of her deceased father Robert Wallace, entitled to the ownership of the other undivided one-half subject to the usufruct of her mother. A judgment of possession was rendered on January 12, 1954 in accordance with these representations, omitting any reference to decedent's grandchildren, the five children of his predeceased son James Wallace.
Then Shallot Bryant died on August 8, 1962, in Natchitoches Parish. Her succession was opened there upon the petition of her daughter Lizzie Wallace. It was represented therein that decedent's entire estate consisted of the one-half interest in the forty acres already described; and that Shallot Bryant was married but once and then to Robert Wallace. Lizzie Wallace was alleged to be the sole issue of this marriage. A judgment of possession was therefore rendered on May 14, 1968 sending Lizzie Wallace into possession of Shallot Bryant's interest in the forty-acre tract of land. This judgment omitted any reference to Shallot Bryant's children by her first marriage to Willis Hall or to her grandchildren, the children of her predeceased son James Wallace, issue of her marriage to Robert Wallace.
After the death of her mother, Lizzie Wallace acquired by deeds from Willis Hall, Jr., Nellie Hall, Samuel E. Ben and Bessie Wallace the interest they claimed in the forty acres. These acquisitions divested the interest of the children born of Shallot Bryant's first marriage to Willie Hall. The interest of one of the children of Shallot's predeceased son James was also conveyed thereby. Only the interest of four children of James Wallace then remained outstanding.
On September 3, 1968 Lizzie Wallace and her husband Man Lee Odums mortgaged the property. In due course the note became the property of All-State Credit Plan Natchitoches, Inc. Some months later, in the early part of 1969, Man Lee Odums and his wife Lizzie Wallace filed a voluntary petition in bankruptcy listing the forty acres as an asset. All-State paid foreclosure fees to the bankruptcy court, and the property was advertised for adjudication to All-State. Shortly before the date fixed for the adjudication, Estelle, Jennie Lee and Blanchie Lee Wallace, three children of James Wallace, obtained a temporary restraining order enjoining the proposed adjudication. The bankruptcy court subsequently disclaimed any interest in the property to permit the parties to proceed with their claims in the state courts.
All-State then filed suit on August 21, 1970 to foreclose on its mortgage by executory process. As a result on October 8, 1970 the forty acres were sold to All-State as the last and highest bidder by the Sheriff at public auction.
The instant suit is a petitory action instituted by All-State on January 11, 1971 in which Estelle, Jennie Lee, Blanchie Lee and Leamon James Wallace are made defendants. All-State relies on the provisions of Section 5682 of Title 9 of the Revised Statutes to maintain its acquisitive prescription of the interest of these heirs, and to bar them from asserting an interest in the succession of their grandfather Robert Wallace. It is conceded, however, that the defendants are entitled to an interest in the succession of their grandmother Shallot Bryant. If Section 5682 is applied in accordance with All-State's contention, it is stipulated the defendants together would only be entitled to an undivided 8/100 interest in the property as heirs in the Succession of Shallot Bryant; whereas if Section 5682 is not applied in accordance with All-State's contention, defendants would be entitled to 28/100 undivided interest in the property as heirs inheriting in both successions.
*669 The statute relied upon by All-State provides:
An action by a person who is an heir or legatee of a deceased person, and who has not been recognized as such in the judgment of possession rendered in the succession of the deceased by a court of competent jurisdiction, to assert any right, title, or interest in any of the property formerly owned by the deceased against a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased in this judgment of possession, is prescribed in ten years if the third person, or his ancestors in title, singly or collectively, have been in continuous, uninterrupted, peaceable, public, and unequivocal possession of the property for such period after the registry of the judgment of possession in the conveyance records of the parish where the property is situated.
As used herein, "third person" means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession.
In the issues submitted for decision by stipulation, All-State takes the position that its ancestor in title is Lizzie Wallace, recognized as the sole heir by the January 12, 1954 judgment of possession in the Succession of Robert Wallace; whereas defendants contend that Lizzie Wallace is not an "ancestor in title" of All-State within the meaning of that phrase as used in Section 5682 permitting All-State to avail itself of the possession of Lizzie Wallace in computing the ten-year period required by the statute.
The stipulation further concedes that Lizzie Wallace had been in continuous, uninterrupted, peaceable, public, and unequivocal possession of the property from January 12, 1954, the date the judgment of possession was rendered in the Succession of Robert Wallace. This possession, according to the stipulation, continued until the property was sold to All-State by sheriff's sale on October 8, 1970, a period of sixteen years and eight months.
The issue presented for resolution is a narrow one. If the phrase "ancestors in title" applies to Lizzie Wallacea party placed in possession by a judgment of possession which omits heirs entitled to inherit the ten-year period required by Section 5682 is fully satisfied. For under this finding, the "third person", All-State, is given credit or may tack onto the time Lizzie Wallace was in possession (January 12, 1954, the date of the judgment of possession, to October 7, 1970, the date the property was adjudicated to All-State) a period in excess of sixteen years. This time interval when added to the time elapsed since All-State acquired the property (October 8, 1970 to January 11, 1971, the date suit was filed) more than suffices to make up the ten-year requirement of Section 5682. On the other hand, without the benefit of the time Lizzie Wallace possessed the property, All-State cannot establish sufficient possession to satisfy the ten-year requirement.
The trial court held in favor of All-State on these contentions. The Third Circuit reversed. 254 So.2d 701. Certiorari was granted on All-State's application. 260 La. 410, 256 So.2d 292.
On a literal view of the statute no reason appears to exclude from the persons referred to as "ancestor in title", the party named in the judgment of possession. As used "ancestor in title" is a term applying to parties from whom a "third person" purchaser derives his title. Cf. La.Civil Code arts. 3493, 3494. To require a qualification of that phrase by adding to the statute words excluding heirs named in a judgment of possession would not comport with accepted standards of statutory interpretation. La.Civil Code arts. 1, 13.
The term "third persons" as used in Section 5682 is specifically defined in the second paragraph of the statute as "a person other than the one recognized as an heir or legatee of the deceased in the judgment *670 of possession." However, I fail to discern the validity of the contention that this definition has the effect of eliminating heirs placed in possession from the definition of "ancestors in title", confining the meaning of that term to third persons only. In fact, if the Legislature had intended that "third person" and "ancestor in title" should have the same meaning, no separate definition would have been provided for "third person." "Ancestors in title", as we have noted, may include both another "third person", parties recognized in a judgment of possession as sole heirs when other heirs have been omitted, or persons acquiring "through" the latter. The source of the title that the "ancestor in title" conveys is not determinative, so long as a title is actually conveyed. Reference to "third person, or his ancestors in title singly and collectively" is intended to permit the cumulation of possession between them. When the statute refers to "a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased" it is also referring to the third person's "ancestors in title".
In Trahan v. Broussard, 251 La. 714, 206 So.2d 82 (1968), we held the prescription contemplated by Section 5682 was acquisitive prescription and that good faith of the "third person" was not necessary to permit him to invoke this prescription. We did not intend there to say the third person could not tack onto the possession of an heir placed in possession by a judgment omitting other heirs.
The quoted statute creates a new prescription against claims by omitted heirs against third persons in possession. Although persons recognized as heirs in the succession proceeding cannot claim this prescription, I believe their possession may be tacked onto by "third parties". Principally, the statute is designed to settle titles to real estate when "third parties" are involved. The prescription is acquisitive, because it is designed to divest tardy heirs of their title and perfect title in third persons.
The problem the statute seeks to resolve is the conflict between rights of inheritance belatedly asserted and fraud or abuse of succession procedure as opposed to stabilization of titles, through affording greater prescriptive benefits to succession judgments where third persons are involved.
The statute serves the latter interest by giving prescriptive effect to judgments of possession and, in this context, abrogating the effect of decisions which had refused to recognize a judgment of possession as furnishing a beginning point for the tolling of a ten-year acquisitive prescription. Boyet v. Perryman, 240 La. 339, 123 So.2d 79 (1960); Everett v. Clayton, 211 La. 211, 29 So.2d 769 (1947); Tyler v. Lewis, 143 La. 229, 78 So. 477 (1918); Succession of Lampton, 35 La.Ann. 418 (1883).
By dispensing with the just title and good faith requirements, property otherwise unmarketable is returned to commerce. To illustrate: Take the case of an heir or legatee placed in possession by a judgment in a succession, the judgment omitting other heirs. The heir placed in possession remains in possession for many years, say twenty. Notwithstanding this prolonged possession, a party purchasing from the heir with knowledge of omitted heirs could not under the law prior to Section 5682 acquire the interest of omitted heirs under the acquisitive prescription of Article 3478 of the Civil Code, for the judgment of possession could not serve the just title requirement and the purchaser was not in good faith. Thus the purchaser must remain in possession for the time necessary to perfect his title with the acquisitive prescription of thirty years.
This result no longer obtains under Section 5682. Under the same hypothetical facts the purchaser from the heir placed in possession may obtain a valid merchantable title, if the heir placed in possession and the purchaser collectively have possessed for ten years. This makes it unnecessary to inquire beyond the judgment of possession to be protected by this ten-year *671 acquisitive prescription. The result is that property is returned to commerce, earlier, and heirs are induced to assert their claims promptly. In addition, the theory of absolute, void or radical nullities affords some protection to inheritance rights and institutions without unduly sacrificing stability of titles.
To require "good faith" or deny "tacking" would substantially defeat the statute's principal purpose. As Professor Ellis points out, "The letter of the statute suggests that a third person purchasing more than ten years after registry of the judgment could tack onto the possession of his false heir-vendor." 28 La.L.Rev. 346, 353 (1968).
I respectfully dissent.
NOTES
[1] The property is described as "A certain tract of land, with all buildings and improvements thereon, situated and located in the Parish of Natchitoches, State of Louisiana, and being more particularly described as follows, to-wit: The Northwest Quarter (NW/4) of the Southeast Quarter (SE/4) of Section 4, Township 9, North, Range 9 West, Natchitoches Parish, Louisiana, containing 40 acres, more or less."
[2] Estelle Wallace Ratliff, Jennie Lee Wallace Johnson, Blanchie Lee Wallace McCoy, and Leamon James Wallace. There were additional heirs, but they were not made parties because their interests were acquired by Lizzie Wallace Odums, the heir declared owner of the property in the succession proceedings.
[3] This is the effect of the statute whether it is considered as an enactment to stabilize title in the balancing of the conflicting interests of inheritance rights against third persons relying upon succession judgments, or whether it is considered as elevating succession judgments to the status of deeds translative of title to overcome previous jurisprudence to the contrary. See the dissenting opinion in Trahan v. Broussard, 251 La. 714, 206 So.2d 82; 14 Loyola Law Review 429, at page 434; and 28 Louisiana Law Review 352 and 353.
[1] The property is described as "A certain tract of land, with all buildings and improvements thereon, situated and located in the Parish of Natchitoches, State of Louisiana, and being more particularly described as follows, to-wit: The Northwest Quarter of the Southeast Quarter of Section 4, Township 9 North, Range 9 West, Natchitoches Parish, Louisiana, containing 40 acres more or less".
[2] Estelle Wallace Ratliff, Jennie Lee Wallace Johnson, Blanchie Lee Wallace McCoy, and Leamon James Wallace.
[3] "Art. 496. The ownership and the possession of a thing are entirely distinct.

"The right of ownership exists independently of the exercise of it. The owner is not less the owner because he performs no act of ownership, or because he is disabled from performing any such act, or even because another performs such acts without the knowledge or against the will of the owner.
"But the owner exposes himself to the loss of his right of ownership in a thing if he permits it to remain in the possession of a third person for a time sufficient to enable the latter to acquire it by prescription."
[4] Pascal, Civil Code and Related Subject Matter, 21 La.L.Rev. 53, 64; Miller, Judgments of Possession, 35 Tul.L.Rev. 567, 576 (at N. 66); Lupo, Prescription, 42 Tul.L.Rev. 219, 222-225.
[5] Succession of Lampton, 35 La.Ann. 418, and Boyet v. Perryman, 240 La. 339, 123 So.2d 79.
[6] "Art. 3494. By the word author in the preceding article, is understood the person from whom another derives his right, whether a universal title, as by succession, or by particular title, as by sale, by donation, or any other title, onerous or gratuitous.

"Thus, in every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller."