LOTTINGER, Judge.
The validity of a nineteenth century marriage forms the substantive issue on this appeal, but a procedural question concerning prescription is also at issue. These issues arise in a suit by collateral heirs of the deceased, Solomon Kinchen, to be placed in possession of his estate.
Solomon K. Kinchen died on May 16, 1950. A judgment of possession was rendered on September 20,1950, naming Annie Bell Haynes Kinchen, his surviving widow, as sole heir of the property of the deceased and putting her in full possession thereof, including possession of a lot of ground in Baton Rouge which was separate property of the deceased, which is at issue in this litigation and which is described as follows:
Lot 3, Square 5, Suburb Dupree, bearing Municipal address 814 South 16th Street in the City of Baton Rouge, Louisiana.
*1280 On July 24, 1952, another petition was filed in Solomon Kinchen’s succession by alleged heirs of the deceased, one of whom, Isaac Kinchen, is the petitioner in the present action. That suit was dismissed as having been abandoned on October 1, 1974, under the provisions of La.C.C.P. art. 561.
Annie Bell Haynes Kinchen died on November 14, 1974, and a judgment of possession was rendered the following year naming her sister, Ellen Haynes Foster — the defendant in the present action — as the sole heir of Annie Bell and putting her into possession of Annie Bell’s property, including the lot in dispute.
The present action was filed by Isaac Kinchen on April 18, 1975, and the other collateral heirs later authorized him to pursue their claims.[1] The plaintiff’s basic allegation is that Solomon K. Kinchen died intestate, leaving no direct descendants, and that his succession should devolve upon his collateral relations before and in advance of his wife. Ellen Haynes Foster answered the suit, claiming, inter alia, that Annie Bell was indeed the sole heir of Solomon Kinchen because Solomon and his brothers and sisters were all the illegitimate children of William “Saint” Kinchen and Ellen Smart. Under Louisiana law, the surviving spouse inherits to the exclusion of so-called “natural” brothers and sisters. La.C.C. art. 924; Duplessis v. Young, 11 La.Ann. 120 (1856); Wilson v. Rogers, 14 So.2d 650 (La.App. 2nd Cir. 1943).
Ellen Haynes Foster also alleged that the present action is prescribed under the provisions of La.R.S. 9:5682. That plea was dismissed in the trial court. An additional peremptory exception of prescription was filed on appeal in this court by Ms. Foster, who claims that the collateral heirs’ action is also prescribed under the provisions of La.C.C.P. art. 2004, which allows an aggrieved party to sue for the nullity of a judgment within one year of discovery of the fraud or ill practices which led to the rendition of the judgment.
PRESCRIPTION
In the peremptory exception filed in this court, the defense alleges that the collateral heirs’ action is in the nature of a nullity action seeking to nullify the judgment of possession rendered in behalf of Annie Bell Haynes Kinchen in 1950. The plaintiff’s petition alleges that the judgment of possession rendered in behalf of Annie Bell was obtained by some “fraud or artifice” on Annie Bell’s behalf. The circumstances of the alleged fraud or artifice were known by the plaintiffs when they filed their first suit in 1952 to be placed into possession of Solomon Kinchen’s property. So there is no doubt that if Article 2004 applies in this case, the plaintiff’s action has prescribed. We do not feel, however, that Article 2004 is applicable because a special provision in the civil code ancillaries, R.S. 9:5682, specifically provides the prescriptive period applicable to cases of this nature. Every petition to be placed in possession of a succession in which a judgment of possession has already been rendered will necessitate the nullifying of the previous judgment should the plaintiffs prevail. But such a petition is in the nature of a suit for possession and for ownership rather than a suit to nullify a previously rendered judgment. Our legislature has provided a specific prescriptive period for actions by heirs not recognized in a judgment of possession who later seek to obtain property that has passed into the hands of a third person. That prescriptive provision is embodied in R.S. 9:5682.
In a well reasoned opinion on the prescriptive issue raised under R.S. 9:5682, the trial court denied Ms. Foster’s peremptory exception. Although R.S. 9:5682 has been amended since this action was filed, our Supreme Court has held that a proceeding of this nature commenced prior to. the amendment is governed by the former provisions of the statute. Jackson v. D’Aubin, *1281 338 So.2d 575 (La.1976). The prescriptive issue is therefore governed by the provisions of R.S. 9:5682 as that statute read prior to 1975. In pertinent part, the statute provided:
Section 1. An action by a person who is an heir or legatee of a deceased person, and who has not been recognized as such in the judgment of possession rendered in the succession of the deceased by a court of competent jurisdiction, to assert any right, title, or interest in any of the property formerly owned by the deceased against a third person who has acquired this property from or through a person recognized as an heir or legatee of the deceased in this judgment of possession, is prescribed in ten years if the third person, or his ancestors in title, singly or collectively, have been in continuous, uninterrupted, peaceable, public, and unequivocal possession of the property for such period after the registry of the judgment of possession in the conveyance records of the parish where the property is situated.
As used herein, “third person” means a person other than one recognized as an heir or legatee of the deceased in the judgment of possession.
Ms. Foster professes that she is a “third person” under the terms of the statute, that she acquired the property through a person recognized as an heir of the deceased in a judgment of possession and that she and her ancestor in title have been in continuous and uninterrupted possession of the property for more than ten years after registry of the judgment of possession. The plaintiffs claim, however, that Ms. Foster cannot “tack” the possession of Annie Bell to make up the required ten years because Annie Bell’s possession was in “bad faith.” The plaintiffs cite All-State Credit Plan Natchitoches, Inc. v. Ratliff, 279 So.2d 660 (La.1972). The case cited is clear authority for the proposition that where an heir has falsely alleged sole heirship in a succession, possession of property transmitted through the succession to the heir pursuant to a judgment of possession is bad faith possession. The case further provides that only good faith possession can be tacked by a third person seeking to invoke the provisions of R.S. 9:5682.
As we see it, the question of whether Annie Bell was in good or bad faith in alleging sole heirship in Solomon Kinchen’s succession turns on the same issue which governs the substantive question in this case. That issue is whether Solomon Kin-ehen and his brother and sister were the legitimate offspring of William “Saint” Kinchen and Ellen Smart. Their legitimacy, in turn, depends upon whether William “Saint” Kinchen and Ellen Smart were ever legally married. We will, therefore, defer our decision on the peremptory exception of prescription until we address the merits of the case.
VALIDITY OF THE MARRIAGE
William “Saint” Kinchen and Ellen Smart were allegedly married in 1877. Of this union three children who play a role in this dispute were born: Solomon, the deceased; a brother, Esiakiah; and a sister, Ethyl (or Ethel). All took the surname Kinchen. Esiakiah and Ethyl predeceased Solomon, but left children who are the plaintiffs in this litigation. As noted above, when Solomon died, his wife, Annie Bell, petitioned to be placed in possession of his property as his sole heir at law. When some of the present plaintiffs sued in the 1950s to be placed into possession of the property, Annie Bell raised the same defense that Ellen Haynes Foster raises today — that Saint Kinchen and Ellen Smart were never legally married and that their children were therefore illegitimates.
The sole documentary evidence presented to show that a marriage was confected between Saint Kinchen and Ellen Smart was an application for a marriage license dated March 3, 1877, authorizing the marriage of William Kinchen and Ellen Smart. The marriage license itself was never filed in the courthouse records, nor was any record of its existence kept. The documentary evidence also shows that on October 14, 1895, one S. Kinchen and Ella Chaney *1282 obtained an application to be married in the same parish. No record of a separation or divorce between William Kinchen and Ellen Smart was submitted in evidence nor was any attempt made to show that the person named William Kinchen and the person named S. Kinchen were or were not the same person.
The only oral testimony concerning the marriage between William “Saint” Kinchen and Ellen Smart came from the nominal plaintiff, Isaac, who testified that as a four-year-old child he heard his mother and grandmother speak about his grandmother’s marriage to Saint Kinchen. Isaac testified that he remembered his grandmother talking about her husband. She told Isaac she divorced Saint Kinchen because he was a jealous man. Isaac apparently did not know Saint Kinchen at all, and opined that Saint Kinchen “went away and married somebody else, I reckon.” On cross examination, Isaac admitted that his grandmother lived with one Mayday Robinson for the entire time he has known his grandmother.
The defense introduced into evidence certain answers to interrogatories filed by Annie Bell Haynes Kinchen in the succession proceedings which took place in the 1950s. In those answers, Annie Bell stated that her husband knew nothing about his father because he (her husband) was reared by Mayday Robinson, his stepfather. She also said that her husband did not know whether or not his father and mother were lawfully married. Her husband told her, however, that his property would go to her upon his death.
Like the trial judge, we find that the evidence presented by the plaintiff is sufficient to show that a valid marriage took place between William “Saint” Kin-chen and Ellen Smart. It was not necessary for the plaintiff to prove that an actual ceremony took place because such proof cannot always be made. Boykin v. Jenkins, 174 La. 335, 140 So. 495 (1932). When the marriage sought to be proved took place more than a hundred years ago, proof of its confection is obviously difficult to obtain. The fact that a marriage license was taken out and the fact that the children took the surname are sufficient to prove that William “Saint” Kinchen and Ellen Smart were legally married. The plaintiffs in this case are therefore the lawful collateral heirs of the deceased, and are entitled to be placed in possession of the property described earlier in this opinion. Our finding that the marriage was valid and that the heirs are legitimate results, concomitantly, in a finding that Annie Bell’s allegation of sole heir-ship was in bad faith, rendering her possession of the property to be in bad faith. The trial court’s decision overruling the peremptory exception of prescription under R.S. 9:5682 is affirmed.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed in all respects. The costs of this proceeding will be borne by the defendant.
AFFIRMED.

. The named plaintiff in this action, Isaac Kin-chen, a nephew of the deceased, obtained a power of attorney from Samuel Kinchen, Solomon Kinchen, Joseph Kinchen, Elizabeth Sat-terfield and Lovey Satterfield, all of whom claim to be lawful nephews and nieces of the deceased. The power of attorney authorizes Isaac to prosecute this suit on their behalf.